Okay, the next case is number 2012-11-64, Kenneth M. Dunlop v. DUNLOP MANUFACTURING. I'm here to see Brooks against Dunlop Manufacturing and the United States. Mr. Brooks. Good morning judges. It's my first time doing this, so bear with me. I believe this case is relatively straightforward. It's quite mathematical. This court had decided that under the former section 292B, it was to be analyzed in the same as any other key temp statute that comes out of Stafford v. Brooks Brothers. Vermont Agency of Natural Resources v. the U.S. stated that standing to bring such a case is based in part on a partial assignment of the damages that the government was entitled to to a relator such as myself. Then U.S. Exera O'Kelley, a Ninth Circuit case, elaborated a little more on the False Claims Act, the other key temp statute, which is analogous to the 292, stated that it lied in a unilateral contract right to bring a case under the False Claims Act. Do you understand that a breach of contract cause of action would have to be brought in a court of federal claim? Only if there's monetary damages from what I understand, and that comes out of U.S. v. Tespin. So there's no monetary damages here. As the defendant had pointed out, I'm not entitled to monetary damages until the case is done. The contracted issue here is a standing, when I'm standing. I had taken a lot of effort, time, and brought information to the attention of the government, and then this new statute, Public Law 11229, cut me off at the knees. But you just said you weren't injured. You're saying I took a lot of time, which I imagine you think means equates to a lot of money. Those are breach of contract damages, to which you can maybe argue you're entitled, but that would have to be in the court of federal claim. The I took a lot of money, and that's why I'm harmed idea doesn't help you with equitable remuneration, which is what you seem to be suggesting you're asking for. Am I wrong? Well, what I'm asking for is to get my standing back, not the money. Well, that would seem to me to be equitable remuneration, I guess. You're asking for us to order specific performance of some sort, right? Well, actually, I'm alleging that the law is actually unconstitutional that was passed based upon it violating due process rights, mine, because it was arbitrary capricious. How could you say it was arbitrary and capricious? After we interpreted Section 292 in the early cases, there was this huge flood of litigation that occurred with lots of people who aren't even patent people injured. I don't know for sure, but you may fall in that category. Suddenly filing suit, jumping on the bandwagon to file suit against these folks who are false markings. I'm not suggesting false marking is a good thing. Maybe it's great that lots of people did it, but Congress perceived it, as they said so, as a tax on the system, a bad tax, something that shouldn't happen. Huge flood of losses. They thought most of it shouldn't be there. They came along and changed it. So how is that arbitrary and capricious? They had a rational basis. They believe the litigation is vexed. They said so. I don't see how that's not a rational basis. Well, the effect of the Congressional Act is to unlawfully extend the benefits of the patent. And that is that people, parties, were able to mark products as having a valid patent on them far beyond the time that it's allowed. But to those people, Congress gave a right of cause of action. 292 doesn't exclude everybody. It allows people who are competitively harmed by this process. So if you were able to allege a competitive harm, then you'd still be able to bring a 292 action. So to the extent that you're saying the law is arbitrary because people who were harmed can't bring a cause of action, actually, the law does allow that. So that can't be a basis for saying the law is unconstitutional. Oh, I didn't say that the aggrieved party compensation is not in the statute. I'm an informer, a simple informer. I'm not an aggrieved party. I spent time and money. I had relied upon the government's offer, which was I would get 50% of the penalty. But that's a breach of contract. I spent time and money and relied on the government's offer. You're saying you were damaged because the government didn't fulfill its contract. That's breach of contract. There is a cause of action and an avenue for you to seek redress for that. Well, that would be in a district court if you were going to use the Baby Tucker Act, which I was in a district court. So what we're arguing about is in the complaint, the statutory definition or the statutory power of the district court to hear my case was a different number, a different set of numbers. So I was in the district court, and the district court heard this argument as well, and the district court did not come to the conclusion that the due process argument had to be brought in a separate tribunal. Why didn't you amend your complaint to bring a breach of contract action in the district court seeking the damages for your time and effort that you suffered when the government breached this contract with you? Well, because I believe the statute's unconstitutional, and that procedure's really not necessary. So in the district court, was your argument about the contract as it's laid out by the district court, he seems to put that issue under the heading of this is a due process violation. Yes. And that's the way you argued it, right? Yes. You weren't independently arguing the contract. You were just sort of making that one of the arguments you were making in connection with due process. His conclusion, however, was whatever that contract argument is about, that doesn't affect the standards of the statute, which is rational basis. He's right about that, and then he went on to evaluate whether or not there was a rational basis. Do you have any quibble with that? Of course I do. There's Graham v. Deere, which Graham v. Deere makes clear that the intellectual property clause is a grant of power and a limitation. And as a result, when Congress acts under its intellectual property clause, it's my interpretation of Justice Clark's opinion that there's a heightened level of scrutiny so as to not unduly extend monopolies in the United States.  I would take at least an intermediate scrutiny level, kind of like equal protection. So just to be sure, you're arguing that even if this statute is not unconstitutional, it can't be retroactively imposed against cases that were filed before the statute was enacted? Yes, Your Honor, for several reasons. I contend that the statute doesn't even pass the minimal scrutiny level because the net effect, again, is that it allows the parties to advertise a monopoly long and beyond the time which the monopoly is valid. And as a result, there's no legitimate purpose in that because that is, in effect, allowing third parties to lie to the public. And I believe the NFIB Sebelius case, Justice Roberts' new interpretation, or actually the return to the old interpretation of the necessary improper clause, might have some impact in this argument because while that statute might have been necessary to remedy the vexatious litigation, as Judge Moore pointed out, I contend it's improper because of its— Let me go back to my question. Oh, I'm sorry. Which I thought was that your position was that it doesn't apply to you whether or not it's proper, or you're saying that for you to prevail in any sense at all, whether or not you need to prove actual damages, that the statute is unconstitutional for all purposes? No, Your Honor. I'm a simple informer. I don't have to—I'm not an aggrieved party. I don't believe I have to prove actual damages to show that the statute is unconstitutional. Well, if you're not damaged, how can you be aggrieved? I'm not aggrieved. I'm a simple informer. I'm just a party who filed to enforce this penal statute, which was 292A. And as a result, I had a standing with the government, and I relied upon that offer. I accepted it, and then the only damages I have were for the efforts taken. They're not damages in a competitive sense, which the statute allows. So to clarify, my damages are based on the acts taken to enforce the statute. But also to clarify, and I think Judge Newman alluded to this earlier, you're not challenging the prospective application of the statute, right? Not at all. You're just challenging the so-called—what we call the retroactivity provision. Yes, Your Honor. That it would be applied to pending cases. Yes, Your Honor. And are you—you're no longer on appeal arguing about a taking? No, Your Honor. Okay. All right. Let's hear from the other side. This is the interview time. Mr. Toombs. Thank you, Your Honor. May it please the Court, to the extent that Mr. Brooks is raising a due process claim here, it seems to be framed as being based on a property interest in a contract with the United States. I'm not clear exactly what his claim is, but at least to the extent that this Court has jurisdiction, it seems to be based on his idea that there's a contract with the United States. Your Honors, there's not a contract with the United States. No one has ever understood a QI-TAM statute as forming a contract. There's no textual basis here for believing that this particular QI-TAM statute formed a contract. There's no historical basis for believing that this QI-TAM statute formed a contract. Like QI-TAM statutes elsewhere in the U.S. Code, and indeed like statutes generally, it's a statement of policy. Well, you say there's no basis for forming a contract, but you would probably not hold that same view, correct me if I'm wrong, if he actually prosecuted it through to damages and then the government tried to take the whole 100 percent. If he prosecuted it through to damages, he would certainly be entitled to his half, but not under a theory of contract. Under what theory? I'm sorry, Your Honor? Under what theory? Under the theory that 292B specifically allocates half of it to him. So, you know, for example, if a tax statute says that somebody is entitled to a particular tax refund, as a matter of law, they may be entitled to that refund and there may be procedures by which they can avail themselves of the refund, but it doesn't mean that it's a contractual right. Not every statutory right is a contractual right. And I don't believe that my friend here has raised any different statutory theory. My understanding of this brief is that it's entirely premised upon the idea that there is a contract. His opening brief really doesn't offer any basis for believing that there's a contract. Well, do you agree? The district court didn't even reach that issue, right? That's correct. It doesn't matter because the same level of scrutiny applies and the government is right. Does the government agree with that? Yes, we do, Your Honor, and that's certainly a valid basis on which to decide the case. I was just merely pointing out because I'm not exactly sure what his theory is that he's advancing. His sort of various versions of the theory are all premised on the idea that there's a contract. And so to us, that just seems like the simplest way to resolve the case, that there is no contract. A QI-TEM statute is a statement of policy about how damages, if ultimately rewarded, will be divided between the United States and the appointee. Unless there are any other questions. No, I think we're all right. Let's hear from Ms. Levy. Thank you, Your Honor. Good morning. May it please the Court. We agree with the government's position that because Brooks has not shown, at least under the Supreme Court standard in National Railroad, that the Congress intended to bind itself contractually under the pre-AIA version of Section 292B, and further, that because the Congress's enactment of amendments to 292B under the AIA are legitimate under a rational basis standard, that the Court's decision below should be affirmed. Is that analysis affected by the fact that he's not challenging the entirety of the prospective application of the statute? So a lot of the arguments we make about whether the Congress had a basis for doing it and all of this, is it different because he's only challenging the retroactive application? Is there a different analysis? I think the analysis under a retroactive application is one based on a rational basis. But the question is, not do they have a rational basis for enacting this in the future, but whether or not they had a rational basis for necessarily applying the statute to pending cases. Right, retroactively. They did have a rational basis. And that basis was? The basis was the frivolous lawsuits that Congress noted. I think in many congressional statements there was a worry that there was a burden put on companies having to deal with frivolous lawsuits, and that certainly is a basis for determining that Congress acted rationally. But Mr. Brooks says that even if it were rational, and even if there were frivolous suits, and even if his suit was frivolous, he complied with the law as it existed at the time that he filed the suit. And therefore it can't be wiped out retroactively. I think that that argument, as Mr. Brooks posits it, is grounded in contract. And there is just clearly no contractual basis. There is no basis for making a contractual argument. To start, QTAM actions are grounded, have their origin, have a statutory origin. So as a result of that statutory origin, Congress has to figure out a way in which to express in a statute that it is authorizing a QTAM action. And over the course of time, and even the Eighth Circuit has acknowledged this, that there are certain languages that you typically see when you're authorizing a QTAM statute. And that is precisely, if not identically, the language that you find in Section 292B. So that's just an express authorization by Congress to bring a QTAM lawsuit. And it's no more than that. It's no contract, nothing. Anything else you need to tell us? No, Dunlop has no further remarks. Okay, thank you. Mr. Brooks, you have a couple of minutes for rebuttal. Real quick. It's my contention that the numerous of, quote, frivolous lawsuits that were filed was indicative of a systemic problem in the patent world. And that is, many, many companies had been trying to extend their monopoly right by unlawfully advertising the existence of a patent on their products. This court even found that. I mean, the myriad of cases started with Stouffer v. Brooks. So Congress acts to end these cases, and I have no problem with a prospective act. But the issue becomes, is it just and fair for a government to induce its citizens to act, expend their own money, and go forward and cut them off at the knees and say, well, you know what, we were just kidding. I mean, if you think about it, it's a way of generating economic activity. And even under the Commerce Clause, I don't think that's a viable or accepted way to generate economic activity. However, we are discussing the Intellectual Property Clause here. And again, I think Graham v. Deere makes clear the government has limited powers here. And those powers do not allow them to protect a third party from lying to the public about saying they have a monopoly right when they do not. This case is particularly interesting because there is a Ninth Circuit published opinion that held the patent which was recited on this product invalid in 1977. Yet despite that, this number continued to be shown on this product, even though the product had gone through various machinations where the current owner of this intellectual property, I assume, their trademark appeared right next to the patent number. I would like to point out that in not one of the cases cited in the government's brief where there had been a change to a TTIM statute, did the government cut off the relator completely? That is, in each of the cases, even the Crocker case, the penalty was increased. He still had a right to bring the case. You say, did the government cut off here? Congress cut it off. I'm sorry. Well, Congress. I assume, well, it takes the President to sign. So, I mean, that's the whole government. So, Congress cut off. In each of those cases, Congress did not completely remove the relator's ability to capture some sort of benefit that he conferred on the government. Even the cases coming out of the 40s. What if the relator were injured and you told us that there was no injury? There was no competitive injury to me. No injury, any monetary injury. Is that what you mean by competitive injury? Yes, there was no monetary injury. I would like to argue that Congress had no authority to do this at all, either retroactively or prospectively. Well, retroactively, it becomes a much, much more tenuous act. Prospectively, I don't see why they couldn't. I mean, it would make sense if they could prospectively allow this amendment because it was unknown which party had violated the statute at that time. And so, when a case had not been brought, then arguably, it was not a harm that needed to be remedied under the former statute. So, a prospective application of the change to 292B, I believe, would be warranted. But the very fact that these cases were brought indicate that someone in society thought there was a harm. And I just want to point out that the cases, Share the Anaconda, Rodriguez v. Weekly Publications, and the Bayers v. Brooks, in each of those cases, the relator had an opportunity. Should the government not go forward with prosecuting the relator's action once the relator had already commenced it, the relator always had the opportunity to come back and move forward with prosecuting the case. That's just not the case with this statute. The government decided to keep all the money itself. It says, your standing is gone. We don't care. And this is historically significant. It's never been done in our culture. Thank you. Thank you, Mr. Brooks. Thank you, Ms. Bibby. Mr. Jay, the case is taken under submission.